IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Joseph Britt and Brenda Britt, | ) |
|                                Plaintiffs, | ) C/A No. 6:18-cv-03117-DCC |
| v. | ) **OPINION AND ORDER** |
| Sorin Group Deutschland GMBH and Sorin Group USA, Inc.,[1] | ) |
|                                Defendants. | ) |

This matter is before the Court on Defendants Sorin Group Deutschland GMBH and Sorin Group USA, Inc.'s Partial Motion for Summary Judgment. ECF No. 168. Plaintiffs Joseph and Brenda Britt filed a Response in Opposition, and Defendants filed a Reply. ECF Nos. 208, 214. For the reasons set forth below, the Motion is granted in part and denied in part.

## **BACKGROUND**

This case arises from a nontuberculous mycobacterium ("NTM") infection Plaintiff Joseph Britt ("Britt") suffered following a coronary artery bypass surgery he received on September 13, 2013, at Greenville Health System's ("GHS") Greenville Memorial Hospital in Greenville, South Carolina. ECF No. 1 at 2. Plaintiffs claim Britt was exposed to the NTM through the Sorin 3T Heater-Cooler System (the "Sorin 3T Device") that was used

---

[1] Defendant LivaNova Holding USA, Inc. was renamed Sorin Group USA, Inc. and Defendant Sorin Group Deutschland GMBH was added pursuant to Plaintiffs' Amended Complaint filed on February 8, 2023. ECF No. 125.

to regulate his blood temperature during the procedure. *Id.* at 1–2. Initially, following his procedure, neither Britt nor his physicians noticed any signs of infection at his surgery site or any other issues related to his risk of infection. *Id.* at 9. Rather, his surgical wound appeared well healed for many months after the surgery. *Id.* On December 31, 2013, Britt suffered a fall at his home and again sought medical treatment at GHS, where he learned that he had sustained rib fractures and increased swelling but was not tested for NTM. *Id.* On November 10, 2015, Britt returned to GHS due to having a boil-like lesion on the sternal incision site from his heart surgery and was diagnosed and treated for a surface staph infection. *Id.* at 9–10. Following additional testing procedures and treatment, Britt's infection seemed to be largely healed by the time Plaintiffs moved to Charleston, South Carolina in July of 2016. *Id.* at 10–11. However, when Britt became a patient of the Medical University of South Carolina upon his relocation, he was referred to an infectious disease expert who ultimately found that Britt tested positive for an NTM infection in December of 2016. *Id.* at 11.

On November 17, 2018, Plaintiffs brought this action against Defendant and former defendants LivaNova PLC and Sorin Group Deutschland GMBH, alleging claims for negligence, strict products liability, breach of express warranty, breach of implied warranty, negligent misrepresentation, misrepresentation by omission, violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), loss of consortium, and punitive damages. ECF No. 1. On December 14, 2018, this case was transferred to the United States District Court for the Middle District of Pennsylvania by the United States Judicial Panel on Multi-District Litigation ("MDL") for coordinated and consolidated pretrial

proceedings with 84 other civil actions involving the Sorin 3T Heater-Cooler System. ECF No. 7; *In re: Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig. (No. II)*, 289 F. Supp. 3d 1335, 1336 (J.P.M.L. 2018). While in the MDL, Plaintiffs' claims against Defendants LivaNova PLC and Sorin Group Deutschland GMBH were voluntarily dismissed without prejudice. ECF No. 42-2 at 2. General discovery was also conducted, and a settlement program was implemented, but Plaintiffs' case did not resolve. ECF No. 42 at 1. Thereafter, on July 19, 2021, the MDL court remanded the case back to this Court. ECF No. 15-3 at 4. In its suggestion of remand, the MDL court stated:

> It is our view that, at this juncture, this case will be most effectively handled by the trial judge in the District of Carolina. To the extent any additional discovery and pretrial motion practice might take place, it will concern the Britts and the hospital where Mr. Britt[']s surgery took place. Moreover, Plaintiffs claims shall be litigated and decided under South Carolina law and it is presumed that the majority of the fact witnesses are located in South Carolina. Now that summary judgment has been denied, prompt disposition of the claims can best be achieved by remand. All of the foregoing considerations all favor remand to the District of South Carolina and we suggest the same to the Panel. The Clerk of Court shall forward a copy of this Order to the Panel. *Id.*

On July 21, 2023, Defendants filed a Partial Motion for Summary Judgment on Plaintiffs' claims for strict liability – manufacturing defect, breach of express warranty, breach of implied warranty, negligent misrepresentation, misrepresentation by omission, violation of the South Carolina Unfair Trade Practices Act, and punitive damages. ECF No. 168. Plaintiffs filed a Response in Opposition, and Defendants filed a Reply. ECF Nos. 208, 214. The Motion is now before the Court.

## **APPLICABLE LAW**

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Federal Rule Civil Procedure 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce evidence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

### I.     Strict Liability – Manufacturing Defect (Count II)

Defendants argue that they are entitled to summary judgment on Plaintiffs' strict liability – manufacturing defect claim because Plaintiffs have presented no evidence that the Sorin 3T Device used in Britt's surgery deviated from the manufacturer's specifications. ECF No. 168-1 at 10. In contrast, Plaintiffs contend that the Sorin 3T Device was defective because the introduction of water to the machine during the

5

manufacturing process contaminated the device leading to the formation of biofilm and was unsafe for use during Britt's surgery. ECF No. 208 at 30–33.

Having reviewed the applicable law and the arguments and submissions of the parties, the Court finds that summary judgment is appropriate as to this claim. "When a manufacturing defect claim is made, a plaintiff alleges that a particular product was defectively manufactured." *Watson v. Ford Motor Co.*, 699 S.E.2d 169, 174 (S.C. 2010). "[C]ourts have identified a manufacturing defect as existing 'when a product does not conform to the design standards and blueprints of the manufacturer and the flaw makes the product more dangerous and therefore unfit for its intended or foreseeable uses.'" *Priester v. Futuramic Tool & Eng'g Co.*, C.A. No. 2:14-cv-01108-DCN, 2017 WL 1135134, at *3 (D.S.C. Mar. 27, 2017) (quoting *Fisher v. Pelstring*, 817 F. Supp. 2d 791, 818 (D.S.C. 2011).

Here, Plaintiffs have presented no evidence that the Sorin 3T Device used during Britt's surgery was defectively manufactured and did not conform to the manufacturer's design and specifications. Instead, Plaintiffs' claim is more appropriately characterized as one for design defect[2] because it alleges a potential design flaw in the Sorin 3T Device. *See Patenaude v. Dick's Sporting Goods, Inc.*, C.A. No. 9:18-cv-03151-RMG, 2019 WL 5299743, at *2 (D.S.C. Oct. 18, 2019) (acknowledging the lack of case law in South Carolina on how a manufacturing defect differs from other defects and finding Plaintiff's claim for manufacturing defect was better assessed as a claim for design defect). Accordingly, the Motion is granted as to this claim.

---

[2] Plaintiffs have alternatively alleged a claim for design defect, and Defendants have not moved for summary judgment on that claim at this point. *See* ECF Nos. 125 at 13–14, 168 at 6.

## II. Breach of Express Warranty Claim (Count III)

Defendants argue that Plaintiffs' claim for breach of express warranty fails because there is no evidence that Defendants communicated any affirmation of fact, promise, or description regarding the Sorin 3T Device that became the basis of the bargain in Defendants' sale of the device to GHS. ECF No. 168-1 at 12 (citing S.C. Code Ann. § 36-2-313).[3] Specifically, Defendants contend that they explicitly disclaimed all express warranties to GHS, other than the 12-month Limited Warranty to repair or replace. *Id.* at 12–13. Therefore, Defendants assert that there were no express warranties made directly to Britt, or to GHS that extend to Britt as a third-party beneficiary, and even if there were, they did not serve as the basis of the bargain as required by statute. *Id.*

On the other hand, Plaintiffs argue that statements made in the Sorin 3T Device's Instructions for Use ("IFUs") constitute express warranties made to GHS, which extend to Britt as a third-party beneficiary under S.C. Code Ann. § 36-2-318. ECF No. 208 at 33–37. Plaintiffs maintain that the IFUs contain operating instructions relating to disinfection

---

[3] Section 36-2-313 provides in part:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise, including those on containers or labels, made by the seller to the buyer, whether directly or indirectly, which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

S.C. Code Ann. § 36-2-313(1)(a)–(b).

7

and cleaning of the device and constitute affirmations of fact or promises that served as the basis of the bargain. *Id.* at 37.

Having reviewed the applicable law and the arguments and submissions of the parties, the Court finds that Defendants are entitled to summary judgment as to this claim. "In South Carolina, a seller of product may create an express warranty . . . including by '[a]ny affirmation of fact or promise, . . . made by the seller to the buyer, whether directly or indirectly, which relates to the goods and becomes part of the basis of the bargain.'" *Brooks v. GAF Materials Corp.*, 41 F. Supp. 3d 474, 480 (D.S.C. 2014) (citing S.C. Code Ann. § 36-2-313(1)). While South Carolina extends express warranties to end-users, a plaintiff must still show that an affirmation of fact or promise formed a basis of the bargain between a buyer and the seller because "[t]he allegation that an affirmation of fact or promise formed a basis of the bargain is expressly required by statute, and factual detail in support of such an allegation is required by the Federal Rules of Civil Procedure." *In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, C.A No. 2:11-cv-00167-DCN, 2012 WL 5408563, at *4 (D.S.C. Nov. 6, 2012).

Here, Plaintiffs have presented no evidence that Defendants made any express warranties to GHS that extended to Britt as a third-party beneficiary. Plaintiffs rely on statements in Defendants' IFUs for the Sorin 3T Device relating to disinfection and cleaning of the device, which are insufficient to support a breach of express warranty claim. Plaintiffs fail to demonstrate that the statements provided an affirmation of fact or promise or that the statements served as the basis of the bargain in Defendants' sale of the device to GHS. *See Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 420 (D. Md. 2001) (stating that the "description of how to operate [a] snow thrower [in an owner's

8

manual] does not constitute an express warranty"). Accordingly, the Motion is granted as to this claim.

### III.     Breach of Implied Warranty Claim (Count IV)

Defendants argue that they are entitled to summary judgment on Plaintiffs' breach of implied warranty claim because Defendants disclaimed the implied warranty of merchantability and implied warranty of fitness for a particular purpose related to the Sorin 3T Device at the time of sale to GHS. ECF No. 168-1 at 13. Specifically, Defendants contend that the Standard Terms and Conditions related to the sale of the Sorin 3T Device to GHS disclaimed the implied warranty of merchantability because the disclaimer contained therein specifically mentions "merchantability" and is conspicuous, i.e., is in "large-type, capital letters" and in a "style and size distinct . . . from the other print in the contract."[4] *Id.* at 14 (citing *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F. Supp. 1027, 1038–39 (D.S.C. 1993)). In addition, Defendants contend that the disclaimer disclaimed the implied warranty of fitness for a particular purpose because it was both in writing and conspicuous. *Id.* (citing S.C. Code Ann. § 36-2-316(2)).

In contrast, Plaintiffs argue that the disclaimer in the Standard Terms and Conditions related to the sale of the Sorin 3T Device to GHS is ineffective because the

---

[4] The Standard Terms and Conditions state in part that:

> THIS LIMITED WARRANTY CONTAINS THE CUSTOMER'S EXCLUSIVE REMEDIES. SORIN GROUP USA, INC. SHALL NOT BE LIABLE FOR ANY INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES ARISING FROM THE USE OF ITS PRODUCTS. SORIN GROUP USA, INC. DOES NOT GIVE ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

ECF No. 168-15 at 4.

purchase of the Sorin 3T Device had already occurred. ECF No. 208 at 38. Plaintiffs allege that GHS purchased the Sorin 3T Device from Defendants in May 2009 and that Defendants sent the disclaimer to GHS in September 2009, three months later. *Id.* However, Defendants argue that in May 2009 GHS entered into an agreement with Defendants to evaluate the Sorin 3T Device and completed purchase of the system in September 2009 when GHS submitted a purchase order for the Sorin 3T Device. ECF No. 214 at 7.

Having reviewed the applicable law and the arguments and submissions of the parties, although the implied warranties arguably extended to Britt as a third-party beneficiary under S.C. Code Ann. § 36-2-318,[5] the Court finds that summary judgment is appropriate as to this claim.

Section 36-2-316 provides that:

> to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be in writing and conspicuous. Language to exclude the implied warranty of merchantability or of fitness for a particular purpose must be specific.

S.C. Code Ann. § 36-2-316(2).

Here, the evidence reveals Defendants delivered the Sorin 3T Device in May 2009, but the parties did not finalize a purchase order for the device until September 2009. *See*

---

[5] Section 36-2-318 provides:

> A seller's warranty whether express or implied extends to any natural person who may be expected to use, consume or be affected by the goods and whose person or property is damaged by breach of the warranty.

S.C. Code Ann. § 36-2-318.

ECF Nos. 168-8 at 2, 168-16 at 2. As part of the sale to GHS, Defendants provided a Standard Terms and Conditions that included a disclaimer conspicuously in writing in large-type, capital letters, which specifically mentioned the words "merchantability" and "fitness for a particular purpose." *See* ECF No. 168-15 at 4; *Godawa v. Dixie Camper Sales of S.C., Inc.*, C.A. No. 6:16-cv-01101-HMH, 2016 WL 3125459, at *3 (D.S.C. June 2, 2016) ("Even if a buyer holds a warranty in the purchasing of a good, 'an original seller is still free to disclaim warranties as to foreseeable users.'" (quoting *Hoffman v. Daimler Trucks N. Am., LLC*, 940 F. Supp 2d 347, 365 (W.D. Va. 2013). Notably, the disclaimer is "distinct from the other print in the contract." *Myrtle Beach Pipeline Corp.*, 843 F. Supp. at 1038. Accordingly, the Motion is granted as to this claim.

## IV.   Negligent Misrepresentation Claim (Count V)

Defendants argue that Plaintiffs' claim for negligent misrepresentation fails because Defendants did not make a false representation to Britt, nor did Britt justifiably rely on any alleged misrepresentation. ECF No. 168-1 at 15. In fact, Defendants allege that they never communicated with Britt in any manner associated with the Sorin 3T Device. *Id.*

On the other hand, Plaintiffs argue that "South Carolina has adopted the Second Restatement view for analyzing the reliance element in a negligent misrepresentation claim." ECF No. 208 at 49 (quoting *Jimenez v. Chrysler Corp.*, 74 F. Supp. 2d 548, 554 (D.S.C. 1999) *rev'd in part, vacated in part*, 269 F.3d 439 (4th Cir. 2001)). According to Plaintiffs, under "the Second Restatement, direct reliance by a particular plaintiff is not required." *Id.* at 49–50. As a result, Plaintiffs allege that providing information to a group

11

of people of which Britt belonged is sufficient to impose liability for negligent misrepresentation. *Id.* at 50.

Defendants counter that Plaintiffs' reliance on *Jimenez* is misplaced as Defendants contend that *Jimenez* was reversed on the issue of whether direct reliance is required under South Carolina law in a negligent misrepresentation claim. ECF No. 214 at 7 (citing *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 447 (4th Cir. 2001) (overturning negligent misrepresentation jury verdict, concluding "the evidence does not support the jury's finding that representations made about [a specific vehicle's] safety in the commercials seen by [plaintiff's wife] were false, or even assuming their falsity, that [plaintiff's wife] relied on them")). Furthermore, Defendants contend that "South Carolina has applied [Restatement] § 552 to non-contracting third-parties only in the accounting and consulting contexts," and that even if the Restatement (Second) § 552 applies, Plaintiffs cannot prove that Britt justifiably relied on any statements of misrepresentation made by Defendants. *Id.* at 7–8 (quoting *Gecy v. S.C. Bank & Trust*, 812 S.E.2d 750, 756 (S.C. Ct. App. 2018)).

Having reviewed the applicable law and the arguments and submissions of the parties, the Court finds that Defendants are entitled to summary judgment as to this claim. "To withstand a motion for summary judgment, a plaintiff must provide clear and convincing evidence in support of a claim alleging fraudulent conduct." *Anthony v. Atlantic, Group, Inc.*, 909 F. Supp. 2d 455, 475 (D.S.C. 2012) (citing *DeGirolamo v. Sanus Corp. Health Sys.*, 1991 WL 103383, at *4 (4th Cir. June 17, 1991); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254–55 (1986)). To proceed beyond summary judgment under South Carolina law, a plaintiff must establish that

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.

*Williams v. Quest Diagnostics, Inc.*, 353 F. Supp. 3d 432, 446 (D.S.C. 2018) (citing *McLaughlin v. Williams*, 379 665 S.E.2d 667, 670 (S.C. Ct. App. 2008); *Redwend Ltd. P'ship v. Edwards*, 581 S.E.2d 496, 504 (S.C. Ct. App. 2003)).

Here, Plaintiffs have failed to present any evidence that Defendants made any negligent misrepresentation to GHS, which extended to Britt as a patient of GHS, or that Britt justifiably relied on any representation Defendants are alleged to have made to GHS. The only statements Plaintiffs reference as a negligent misrepresentation are those made in the IFUs. *See* ECF No. 208 at 49. In regard to representations to GHS, similar to Plaintiffs' breach of express warranty claim where the Sorin 3T Device's IFUs did not constitute an express warranty made to GHS, here too, the IFUs do not constitute a false representation. Specifically, the Sorin 3T Device's IFUs instruct a user how to disinfect and clean the device and do not provide any guarantee as to functionality. As to whether Brit justifiably relied on a representation made by Defendants, in Britt's deposition, he admits that he never had contact with anyone claiming to represent Defendants, nor did Britt ever receive anything in writing from Defendants. ECF No. 168-18 at 4–5. Moreover, Britt never saw any advertisements created by Defendants regarding the Sorin 3T Device. *Id.* at 7.

Finally, Plaintiffs' reliance on *Jimenez* does not support the argument that a party does not have to prove direct reliance in a claim for negligent misrepresentation. In *Jimenez*, the Fourth Circuit held that the evidence did not support the jury verdict for plaintiff on a negligent misrepresentation claim because the plaintiff did not prove that plaintiff's wife saw commercials related to a specific vehicle or that the plaintiff's wife relied on the commercials. *Jimenez*, 269 F.3d at 447. Furthermore, Defendants are correct in so far that the Supreme Court of South Carolina has yet to extend negligent misrepresentation beyond the accounting or consulting contexts.[6] *See Gecy*, 812 S.E.2d at 756. Accordingly, the Motion is granted as to this claim.

## V.     Misrepresentation by Omission Claim (Count VI)

Defendants argue that that they are entitled to summary judgment on Plaintiffs' misrepresentation by omission claim because Defendants, as the manufacturer of the Sorin 3T Device, only owed a duty of disclosure to GHS, the purchaser of the device, and to the physician acting as the learned intermediary between GHS and Britt. ECF No. 168-1 at 16. Defendants allege that without evidence of communication between the parties, there can be no actionable omission. *Id.* at 17.

In contrast, Plaintiffs argue that Defendants' nondisclosure amounts to fraudulent concealment because Defendants owed Britt a duty to speak and by failing to speak, Defendants effectively made a false representation. ECF No. 208 at 50. However,

---

[6] No court in South Carolina has decided whether negligent misrepresentation applies to the specific context before us. However, in *Private Mortgage Investment Services, Inc. v. Hotel and Club Associates, Inc.*, the Fourth Circuit in interpreting South Carolina common law held "that the South Carolina Supreme Court would . . . hold a professional [real estate] appraiser liable to a third party for negligent misrepresentation." *Priv. Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 315 (4th Cir. 2002).

14

Defendants contend that Plaintiffs failed to establish that Defendants owed Britt a duty to speak by failing to present any evidence that Defendants communicated with Britt in any way prior to his surgery. ECF No. 214 at 8–9.

Having reviewed the applicable law and the arguments and submissions of the parties, the Court finds that summary judgment is appropriate as to this claim. Under South Carolina law, a duty to disclose exists under three circumstances:

> (1) where it arises from a preexisting definite fiduciary relation between the parties; (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their deadlines or their position towards each other, such a trust and confidence in the particular case is necessarily implied; (3) where the very contract of transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties.

*Jacobson v. Yaschik*, 155 S.E.2d 601, 605 (S.C. 1967) (citing *Warr v. Carolina Power & Light Co.*, S.E.2d 799, 802 (S.C. 1960); *Gordon v. Fidelity & Casualty Co.*, 120 S.E.2d 509, 515 (S.C. 1961)).

Here, there is no evidence to establish any of the above circumstances. Defendants never created a fiduciary relationship with Britt, and the lack of any communication between the parties prevents either party from establishing trust and confidence in the other. Furthermore, Defendants never expressly transacted with Britt and as such, their relationship cannot be characterized as intrinsically fiduciary. Moreover, Plaintiffs failed to allege a fiduciary relationship in either their Complaint or Amended Complaint. *See* ECF Nos. 1, 125; *Ardis v. Cox*, 431 S.E.2d 267, 270 (S.C. Ct. App. 1993) (affirming trial court's ruling on a fraudulent concealment claim that "there was no allegation of a fiduciary or confidential relationship between the parties, no evidence

15

such a relationship existed and [that the] assertion was not properly raised in the pleadings"). Accordingly, the Motion is granted as to this claim.

### VI. Claim for Violation of the South Carolina Unfair Trade Practices Act (Count VII)

Defendants argue that Plaintiffs' claim for violation of the South Carolina Unfair Trade Practices Act fails because Britt was not a party to "trade or commerce" as prohibited by the statute. They further argue that Plaintiffs cannot establish that Defendants engaged in an unlawful practice or that any alleged unlawful practice caused Britt's injuries. ECF No. 168-1 at 18. Defendants contend that while the Supreme Court of South Carolina initially restricted recovery under SCUTPA to immediate purchasers, the court later expanded recovery to remote purchasers "as downstream purchasers who could demonstrate harm caused by the defendant's upstream unfair or deceptive acts." *Id.* n.10 (citing *Reynolds v. Ryland Grp., Inc.*, 531 S.E. 2d 917, 919 (S.C. 2000); *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 666 S.E.2d 247, 255 (S.C. 2008)).

On the other hand, Plaintiffs argue that privity is not required in a SCUTPA claim and that Defendants knew that patients like Britt would be harmed by alleged unfair and deceptive practices when Defendants sold the Sorin 3T Device to GHS with the understanding that GHS would use the device in patient surgeries and failed to warn of any risks associated with the Sorin 3T Device. ECF No. 208 at 48. However, Defendants argue that while privity is not required for a SCUTPA claim, a claimant must either be a direct or remote purchaser, and Britt is neither. ECF No. 214 at 9–10. In addition, Defendants contend that Plaintiffs cannot establish a connection between any alleged unfair trade practices by Defendants and Britt's injuries because Plaintiffs have not alleged that Britt received any unfair or deceptive statements from Defendants. *Id.* at 10.

Having reviewed the applicable law and the arguments and submissions of the parties, the Court finds Defendants are entitled to summary judgment as to this claim. SCUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. 39-5-20(a).

> To maintain a private cause of action under SCUTPA, a plaintiff must establish: (1) the defendant engaged in an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice; and (3) the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest.

*Brooks*, 41 F. Supp. 3d at 487 (citing *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998); S.C. Code Ann. § 39-5-140; *Daisy Outdoor Advert. Co. v. Abbott*, 473 S.E.2d 47, 49 (S.C. 1996)).

Here, Plaintiffs did not purchase the Sorin 3T Device or receive any communications from Defendants regarding the device. Like their claims for negligent misrepresentation and misrepresentation by omission, Plaintiffs base their SCUTPA claim on an alleged misrepresentation or omission by Defendants regarding purported known risks associated with the use of the Sorin 3T Device and Defendants' failure to warn GHS and its patients of those risks. GHS, not Plaintiffs, purchased the device from Defendants, and Plaintiffs never received any communication from Defendants regarding the Sorin 3T Device. In his deposition, Britt acknowledges that in making his claim against Defendants, Britt did not rely on any promises, written or otherwise, made by Defendants. ECF No. 168-18 at 8–9. Accordingly, the Motion is granted as to this claim.

**VII.    Punitive Damages**

Defendants argue that they are entitled to summary judgment on Plaintiffs' claim for punitive damages because Plaintiffs lack evidence showing that Defendants engaged in conduct directed at Plaintiffs that was willful, wanton, or reckless. ECF No. 168-1 at 3. Defendants allege that at the time of Britt's injury, no report of patient infection associated with the Sorin 3T Device existed and that Plaintiffs have failed to identify measures Defendants could have taken to prevent Britt's infection. ECF No. 168-1 at 19–20.

In contrast, Plaintiffs allege that Defendants engaged in reckless behavior by failing to warn GHS and patients of known risks associated with the Sorin 3T Device despite being aware "of NTM infections and fatalities attributable to the Sorin 3T [Device], such as the latent dangers of water borne NTM laden biofilm, aerosolized and ejected from the Sorin 3T [Device]." ECF No. 208 at 39–40. Plaintiffs further contend that despite Defendants being allegedly aware of the dangers associated with biofilm, Defendants failed to mention biofilm when communicating with U.S. hospitals and failed to design a device not susceptible to biofilm contamination. *Id.* at 44. In addition, Plaintiffs argue that Defendants allegedly continued to deny a connection between the Sorin 3T Device and NTM infections after Britt's surgery in September 2013, which allegedly resulted in Britt experiencing a delayed diagnosis. *Id.* at 46.

Having reviewed the applicable law and the arguments and submissions of the parties, the Court finds that summary judgment is not appropriate as to this claim. "The law of South Carolina permits a jury to award punitive damages to punish, deter, and vindicate the rights of the plaintiff whenever the conduct of the defendant is willful, wanton or reckless." *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 100 (4th Cir. 1991) (citing *Rogers v. Florence Printing Co.*, 106 S.E.2d 258, 261 (S.C. 1958)). "Conduct is willful,

wanton, or reckless when committed with a deliberate intention and under such circumstances that a person of ordinary prudence would be conscious of it as a reckless disregard of another's rights." *Hoskins v. King*, 676 F. Supp. 2d 441, 449 (D.S.C. 2009) (citing *Cohen v. Allendale Coca-Cola Bottling, Co.*, S.E.2d 897, 900 (S.C. Ct. App. 1986)).

Here, there are genuine issues of material fact as to whether Defendants' alleged conduct in this case rises to the level of willful, wanton, or in reckless disregard of Plaintiffs' rights so as to warrant punitive damages. Both parties dispute to what extent Defendants knew of risks associated with the Sorin 3T Device and steps that could or could not have been taken to mitigate those alleged risks. Accordingly, the Motion is denied as to this claim.

## CONCLUSION

For the reasons set forth above, Defendants' Partial Motion for Summary Judgment [168] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted as to Plaintiffs' claims strict liability – manufacturing defect, breach of express warranty, breach of implied warranty, negligent misrepresentation, misrepresentation by omission, and violation of the South Carolina Unfair Trade Practices Act. The Motion is denied as to Plaintiffs' claim for punitive damages.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.<br>United States District Judge

September 6, 2023
Spartanburg, South Carolina